Lloyd DUEST, Petitioner–Appellant,

v.

Harry K. SINGLETARY, JR., Secretary,
Florida Department of Corrections,
Respondent–Appellee.

No. 90–6009.

United States Court of Appeals,
Eleventh Circuit.

July 15, 1992.

Martin J. McClain, Tallahassee, Fla., for petitioner-appellant.

Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before TJOFLAT, Chief Judge, KRAVITCH and COX, Circuit Judges.

KRAVITCH, Circuit Judge:

Petitioner Duest was convicted of the first-degree murder of John Pope and sentenced to death. The Florida Supreme Court affirmed Duest's conviction and sentence on direct appeal, *Duest v. State*, 462 So.2d 446 (Fla.1985), and denied all post-conviction relief. *Duest v. Dugger*, 555 So.2d 849 (Fla.1990). Duest now appeals from the district court's denial of a writ of *habeas corpus*, which petitioner sought on several grounds. We affirm the district court's denial of relief with respect to Duest's conviction for first-degree murder. Because, however, the sentencing jury's consideration of a conviction and sentence later vacated by the Commonwealth of Massachusetts constituted reversible error under the Eighth Amendment and *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), we vacate Duest's death sentence and remand to the district court.

## I. BACKGROUND AND COURSE OF PROCEEDINGS

John Pope was last seen alive on February 15, 1982 (President's Day), in Ft. Lauderdale, Florida, and was found dead early the following morning. Duest was arrested April 18, 1982, and on May 21, 1982, was charged by indictment with Pope's murder. During the March 1983 trial, held in Broward County, Florida, Duest relied on an alibi defense, presenting both testimonial and documentary evidence that he had been in Massachusetts throughout President's Day Weekend (February 13–15) 1982 and until April 5, 1982, on which date he had arrived in Florida on a Trailways bus. In

response, the prosecution presented seven witnesses, all of whom testified that they had seen Duest in the Ft. Lauderdale area during President's Day Weekend, and some of whom testified that they had seen Duest with Pope hours before the latter was found dead. Although the prosecution suggested that Duest's alibi witnesses had merely confused the dates of his appearance in and departure from Massachusetts, the prosecution never explicitly argued that Duest had not been in Massachusetts on April 5. The jury convicted Duest of first-degree murder on March 18, 1983.

On the following day, the penalty phase of the proceedings commenced. At this time, the government sought, *inter alia,* to show that Duest's prior criminal record contained two convictions for crimes of violence. Under Florida law, such crimes constitute an aggravating circumstance to be weighed by a sentencing jury against evidence of statutory and nonstatutory mitigating evidence. Fla.Stat.Ann. § 921.-141(5)(b).[1] To establish this aggravating circumstance, the prosecution introduced into evidence two convictions from the Commonwealth of Massachusetts: one for armed robbery, and the other for armed assault with intent to murder.[2] After the introduction of the second conviction, the sentencing court spoke to the jury as follows:

> State's Exhibit No. 2 is a certified copy from the Commonwealth of Massachusetts. Superior Court, Department of the Trial Court. This is a conviction for armed assault to murder. The defendant pled guilty on January 13, 1971, and was sentenced to a term not exceeding ten years, nor less than five years.
>
> I will read this Indictment to you, also. It says, "Commonwealth of Massachusetts. The Superior Court. At the City

of Cambridge, within and for the County of Middlesex, on the first Monday of April, in the year of our Lord one thousand nine hundred and seventy, the jurors for the Commonwealth of Massachusetts on their oath present that Lloyd Paul Duest on the 4th day of March in the year of our Lord one thousand nine hundred and seventy, at Reading, in the County of Middlesex, aforesaid being armed with a dangerous weapon, did assault Herbert McSheehy and Leo Iacopucci ... with intent to murder them against the peace of said Commonwealth and contrary to the Statute in such case and provided...."

Trial Transcript at 1574–75. The court gave to the jury no additional facts regarding this conviction other than those contained in the Indictment.

After the jury returned from deliberating over Duest's sentence, it asked to see the criminal records pertaining to Duest's Massachusetts convictions. *Id.* at 1631. The court proceeded to re-read to the jury each indictment and notice of guilty plea and sentence. *Id.* at 1631–33. After this second reading, the jury returned to its deliberations, and subsequently recommended a sentence of death by a seven to five vote. It is not clear from the record how much time elapsed between the time the court re-read the prior convictions to the jury and the time that the jury recommended death; the sentencing phase, however, lasted only one day. On April 24, 1983, the trial court accepted the jury's recommendation and sentenced Duest to death. The trial court found four aggravating factors to exist, including the "prior crimes of violence" circumstance listed in Fla.Stat.Ann. § 921.141(5)(b), and none of

---

**1.** Florida is a "weighing" state. In the sentencing phase of a capital trial, the jury must determine (1) whether sufficient aggravating circumstances exist as enumerated in Fla.Stat.Ann. § 921.141(5), (2) whether mitigating circumstances, both statutory and nonstatutory, exist which outweigh the aggravating circumstances, and (3) based on this calculus, whether death is the appropriate sentence. Fla.Stat.Ann. § 921.-141(2). Unlike other weighing states such as Mississippi, however, the sentence reached by a

Florida capital jury is purely advisory. Under Fla.Stat.Ann. § 921.141(3), the trial court, the sentencer under Florida law, must itself ultimately weigh aggravating and mitigating circumstances in determining whether death is the appropriate sentence. Fla.Stat.Ann. § 921.-141(3).

**2.** Duest had pled guilty to both crimes.

the statutory mitigating factors listed in Fla.Stat.Ann. § 921.141(6).

The Florida Supreme Court affirmed Duest's first-degree murder conviction and death sentence. *Duest v. State*, 462 So.2d 446 (Fla.1985). Subsequently, the Massachusetts Court of Appeals vacated Duest's conviction for armed assault with intent to murder on the grounds that the indictment did not charge Duest with conduct sufficient to prove he acted with intent to murder. *Commonwealth v. Duest*, 26 Mass. App.Ct. 137, 524 N.E.2d 1368 (1988).[3] On October 20, 1988, the armed assault charge against Duest was nolle prossed. Duest then moved for post-conviction relief under Fla.R.Crim.P. 3.850, alleging, *inter alia,* that the sentencing jury's consideration of Duest's vacated prior conviction in Massachusetts was invalid, and that resentencing. was required. While conducting discovery after the filing of that motion, Duest's counsel discovered in the State files containing Duest's personal effects a Trailways bus ticket, bearing no name, showing travel from Boston to Ft. Lauderdale on April 5, 1982. Duest proceeded to amend his 3.850 motion to include a claim that the government, by withholding the bus ticket, had withheld material exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that therefore a new trial was necessary. On January 4, 1989, the trial court held evidentiary hearings on the *Brady* issue and on Duest's claim that the jury's consideration of the vacated Massachusetts conviction required resentencing, but ultimately denied Duest all relief on the 3.850 motion. At the hearings, the State conceded that the defendant had put on a wealth of non-statutory mitigating evidence at trial.

Duest then petitioned for a writ of *habeas corpus* in state court, alleging, *inter alia,* (1) the *Brady* violation referred to

*supra,* as well as other *Brady* claims; (2) that the sentencing jury's improper consideration of a prior conviction that had subsequently been vacated by the Massachusetts courts entitled Duest to a new sentencing proceeding, under *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); and (3) ineffective assistance of counsel at the guilt, sentencing and appellate phases of the proceedings.

The Florida Supreme Court denied *habeas* relief and affirmed the trial court's denial of Duest's motion for Rule 3.850 postconviction relief. *Duest v. Dugger,* 555 So.2d 849 (Fla.1990). On the *Brady* issue, the Court held that although the State had inadvertently failed to furnish the bus ticket to the defense, the introduction of the ticket would not have affected the outcome of the case, given the jury's complete rejection of Duest's alibi defense. *Duest v. Dugger,* 555 So.2d at 850–51. The Court also rejected Duest's claim under *Johnson v. Mississippi,* stating that it "believe[d] beyond a reasonable doubt that Duest would still have received a sentence of death without evidence of [the vacated] conviction." *Id.* at 851. The Florida Supreme Court also denied relief on the remainder of Duest's claims.

Duest then petitioned for *habeas* relief in Federal District Court, asserting 25 different claims. In an Order dated September 19, 1990, the district court denied relief on all claims, holding that some of the claims were procedurally barred, and that others had no merit. *Duest v. Dugger,* No. 90–6045–CIV–RYSKAMP (S.D.Fla. Sept. 19, 1990) (hereinafter "September 19 Order"). Duest appeals the district court's determination as to several of these claims. Specifically, Duest makes the following arguments before this court:

(1) Duest is entitled to a new trial in light of the government's withhold-

---

**3.** Duest's 1988 appeal involved his attempt to withdraw his pleas as to both of the aforementioned convictions. Under *Commonwealth v. Henson,* 394 Mass. 584, 476 N.E.2d 947 (1985), a case decided after Duest's conviction but given retroactive effect, Massachusetts treated armed assault with intent to murder as attempted murder, requiring proof of intent. Duest argued

that the indictment charging assault with intent to murder did not reflect evidence of intent to murder. The Commonwealth of Massachusetts agreed with Duest's contention in light of *Henson;* therefore, the Massachusetts Court of Appeals accepted the withdrawal of Duest's plea and accordingly vacated his conviction.

ing of material exculpatory evidence under *Brady* (Issue I);

(2) Resentencing is appropriate because of the sentencing jury's impermissible consideration of the vacated Massachusetts conviction (Issue II);

(3) An evidentiary hearing on the issue of ineffective assistance of counsel at sentencing must be held in district court (Issue III);

(4) Duest was denied effective assistance of counsel at trial by virtue of his lawyer's failure to object to improper prosecutorial statements during the guilt and sentencing phases (Issue IV);

(5) Duest was denied effective assistance of appellate counsel by virtue of appellate counsel's failure to raise several different issues on appeal (Issue V);

(6) There was insufficient evidence to convict Duest of first-degree murder (Issue VI);

(7) The trial court committed reversible error at sentencing by issuing insufficient instructions regarding aggravating factors, in violation of *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (Issue VII);

(8) Duest's was denied his right to a fair trial because of the introduction at trial of flight evidence and evidence of Duest's use of an alias (Issue VIII);

(9) the trial court committed reversible error at sentencing when it instructed the jury that a majority vote (seven of twelve jurors) was needed to return a verdict of life imprisonment as opposed to death (Issue IX); and

(10) Resentencing is appropriate because the trial court's penalty phase instructions impermissibly shifted the burden of proof to Duest to prove that life imprisonment was the appropriate punishment (Issue X).

As noted *supra,* we affirm the district court's denial of *habeas* relief regarding Duest's conviction, but reverse the district court's denial of relief regarding sentencing.

## II. DUEST'S CONVICTION

Duest makes several claims regarding the alleged unlawfulness of his conviction, including those claims identified *supra* as Issue I (the *Brady* violations); Issue IV (to the extent the prosecutorial misstatements took place at the guilt phase of the trial); Issue V (to the extent that appellate counsel failed to raise on appeal issues arising out of the guilt phase of the trial); Issue VI (sufficiency of the evidence); and Issue VIII (erroneous admission of flight evidence and evidence of use of an alias).

Because Duest's *Brady* claim is the sole claim pertaining to Duest's conviction that merits extended treatment here, we reserve that discussion for last, and address Duest's other claims first.

### A. *Ineffective Assistance of Counsel— Guilt Phase (Issue IV)*

With respect to Duest's claim that he was denied ineffective assistance of trial counsel at the guilt phase by virtue of his counsel's failure to object to improper prosecutorial statements, we note that in order to prove ineffective assistance of counsel, a *habeas* petitioner must show that his lawyer performed deficiently, and that such deficient performance prejudiced his client. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Yizar,* 956 F.2d 230, 232 n. 8 (11th Cir.1992). An ineffective assistance of counsel claim presents a mixed question of law and fact and is therefore subject to *de novo* review. *Lusk v. Dugger,* 890 F.2d 332, 336 (11th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 3297, 111 L.Ed.2d 805 (1990).

In this case, whether or not trial counsel behaved deficiently, his failure to object to the prosecutor's allegedly improper statements did not prejudice his client. To prove prejudice, petitioner must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Yizar,* 956 F.2d at 232 n. 13 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). Prosecutorial misstatements do not constitute reversible error unless such misstatements render the trial so fundamentally unfair as to amount to a denial of due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). Given the nature of the (mis)statements in this case, the prosecutor's behavior in this case did not render Duest's trial so fundamentally unfair as to amount to a denial of due process. Thus, any objection by defense counsel would have proven fruitless. Defense counsel's failure to object to these statements was not ineffective assistance.

### B. Ineffective Assistance of Appellate Counsel (Issue V)

■ With respect to Duest's allegations of ineffective assistance of appellate counsel for failure to raise on appeal claims arising out of the guilt phase of Duest's trial, it is clear that the petitioner has not sustained his burden of proving prejudice resulting from appellate counsel's alleged deficient performance. *See Strickland, supra.*[4] In assessing the likelihood of success of a direct appeal, we must accord deference to the Florida Supreme Court's decisions to the extent the Court has decided one of the underlying state law issues giving rise to the ineffective assistance claim. *Alvord v. Wainwright,* 725 F.2d at 1291. Duest contends that appellate counsel was ineffective for failing to raise on appeal (1) the trial court's admission of flight evidence at trial; and (2) the trial court's admission of collateral misconduct.

In denying Duest state *habeas* relief and in affirming the trial court's denial of Duest's 3.850 motion, however, the Florida Supreme Court addressed petitioner's sub-stantive state law claims on the merits. The court concluded that under prevailing Florida law, petitioner's arguments regarding the admission of flight and alias evidence "would have been unavailing had it been raised on appeal." *Duest v. Dugger,* 555 So.2d at 852, and that the admission of collateral conduct was, at most, harmless error. *Id.* at 853. Thus, given the Florida Supreme Court's rejection of Duest's underlying state claims, no prejudice resulted from the failure of Duest's appellate counsel to raise these claims on appeal.

### C. Insufficient Evidence of First-Degree Murder (Issue VI)

■ We find no merit to Duest's contention that there was insufficient evidence to convict him of first-degree murder. To prevail on a sufficiency of the evidence claim, petitioner must show that, viewed in the light most favorable to the prosecution, the evidence in this case could not have permitted a reasonable trier of fact to conclude that Duest was guilty beyond a reasonable doubt of first-degree murder. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Petitioner cannot make such a showing in this case.

### D. Introduction of Flight/Alias Evidence (Issue VIII)

■ The Florida Supreme Court relied on an independent and adequate state procedural ground—that is, Duest's failure to raise the issue of improper introduction of flight and alias evidence on direct appeal—in denying relief on this claim. *Duest v. Dugger,* 555 So.2d at 851. Therefore, Duest is procedurally barred from raising this claim in a federal habeas proceeding. *Wainwright v. Sykes,* 433 U.S. 72, 81–83, 97 S.Ct. 2497, 2503–04, 53 L.Ed.2d 594 (1977).[5]

---

4. The standard of proof and standard of review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel. *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.), *cert. denied,* 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984).

5. As noted in Section II.B, *supra,* Duest also raises these claims in the context of his claim of ineffective assistance of appellate counsel. As discussed therein, the claims have no merit.

### E. *Brady Violation (Issue I)*

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197. In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court noted that "the evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383.

Under the law of this circuit, a defendant seeking to establish a *Brady* violation must prove (1) that the government possessed evidence—which may include impeachment evidence—favorable to the defense; (2) that the defendant did not possess the evidence, and could not obtain it with any reasonable diligence; (3) that the prosecution suppressed the evidence; and (4) that, had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir.), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). There is no question but that the first three of these requirements have been met in this case.[6] The question is whether, had the evidence been disclosed to the defense, a reasonable probability existed that the outcome of the proceedings would have been different. This issue presents a mixed question of law and fact, reviewable *de novo*. *See United States v. Rivalta*, 925 F.2d 596, 597–98 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 215, 116 L.Ed.2d 173 (1991).

Duest has presented several *Brady* claims based on the failure of the State to furnish to the defense various witness statements that, Duest argues, could have been used to impeach the State's witnesses at trial. Although such impeachment evidence falls within the *Brady* rule under *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), none of the statements sought by the defense in any way raised the possibility that the outcome of the trial would have been different. Accordingly, we reject Duest's *Brady* claims with respect to these statements. Duest's claim regarding the April 5 bus ticket merits more extended discussion.

Duest contends that the April 5 Trailways bus ticket served to bolster the contentions of the defense that Duest had been in Massachusetts during President's Day Weekend 1982 and through April 5, 1982, the date on which, according to the defense, Duest left Boston for Ft. Lauderdale. Duest suggests that because the prosecution focused on the credibility of Duest's alibi witnesses, the existence of the bus ticket would have enhanced the credibility of these witnesses such that a reasonable probability exists that the jury would have accepted Duest's alibi. We disagree.

As noted by the Florida Supreme Court, the prosecution presented seven witnesses who testified that Duest had been in Ft. Lauderdale on President's Day Weekend. These witnesses included a man who allegedly had sat next to Duest on the two-day bus trip from New York to Ft. Lauderdale that landed Duest in Florida on President's Day weekend, as well as women with whom Duest allegedly shared an apartment in Florida that weekend. The jury clearly

---

**6.** The third prong of the *Meros* test does not require that proof of "suppression" of the alleged *Brady* material be accompanied by evidence of deliberate withholding of such evidence by the State. "The Supreme Court has recognized that 'suppression' for purposes of a *Brady* analysis is not 'measured by the moral culpability, or the willfulness of the prosecutor.'" *United States v. Spagnoulo*, 960 F.2d 990 (11th Cir.1992) (quoting *United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)). Thus, although the parties dispute whether the State deliberately or inadvertently withheld the bus ticket from the defense, this dispute is of no significance for *Brady* purposes to the question of whether evidence was suppressed.

believed these witnesses rather than Duest's alibi witnesses, most of whom were family members or friends. The existence of the April 5 bus ticket in no way impeaches the testimony of the prosecution's witnesses, in that the ticket indicates only that *someone* traveled from Boston to Ft. Lauderdale on April 5, and says nothing about Duest's whereabouts during the President's Day Weekend.

Admittedly, the existence of the ticket serves to corroborate the testimony of Duest's parents that they put him on a Ft. Lauderdale-bound bus in Boston on April 5. None of Duest's alibi witnesses, however, testified that Duest was in Boston the entire period between February and April 1982. Thus, the existence of the bus ticket in no way contradicts the prosecution's contention, accepted by the jury, that Duest was in Ft. Lauderdale on President's Day Weekend. At oral argument, Duest's counsel conceded that the prosecution never argued explicitly that Duest had not been in Massachusetts on April 5.

The fact that the bus ticket serves to corroborate a part of Duest's story that is not directly relevant to the crime charged does not justify a finding for Duest on the fourth prong of the *Meros* test. In *United States v. Booz*, 451 F.2d 719 (3d Cir.1971), the Third Circuit addressed a situation similar to the one posed in this case. In *Booz*, the prosecution suppressed evidence in the form of statements by local townspeople corroborating the defendant's story as to his whereabouts between 9:30 AM and 10:00 AM the day of a bank robbery for which he was charged. The court found that no *Brady* violation occurred because the bank robbery had occurred between 8:30 AM and 9:00 AM: "[e]vents occurring later in the day ... could lend no support to appellant's case." *Booz*, 451 F.2d at 725. Thus, even though the withheld statements in *Booz* served to corroborate a portion of the defendant's story, they did not corroborate the portion of the story involving the defendant's whereabouts at the time of the crime. If corroboration of

events occurring an hour after commission of the crime lend no support to a defendant's case, corroboration of events occurring months after commission of a crime can have even less relevance to a defendant's case.

Finally, we note that the jury rejected alibi evidence as to Duest's whereabouts on President's Day Weekend that was more compelling than the April 5 bus ticket. The jury failed to be swayed by introduction of an auto parts store receipt from Watertown, Massachusetts, dated February 15, bearing the name of "Duest." [7] As stated by the District Court in its September 19 Order, "[u]nder *Bagley*, there is no reasonable probability that an April bus ticket would have convinced the jury that Duest did not commit the February murder, when the jury did not believe a hardware store owner who produced a February receipt that purportedly showed that Duest was in Massachusetts when Pope was killed." September 19 Order at 12.

Accordingly, we reject Duest's *Brady* claims in their entirety. Because we also reject the remainder of Duest's claims as they pertain to his conviction for first-degree murder, we affirm the district court with respect to Duest's conviction for first-degree murder.

### III. DUEST'S SENTENCE

Duest also challenges his death sentence on a number of different grounds, including those grounds identified *supra* as Issue II (the *Johnson v. Mississippi* claim relating to Duest's vacated prior conviction); Issue III (ineffective assistance of counsel at sentencing); Issue IV (to the extent the prosecutorial misstatements took place at the penalty phase of the trial); Issue V (to the extent that appellate counsel failed to raise on appeal issues arising out of the penalty phase of the trial); Issue VII (insufficient instructions at sentencing phase on "heinous, atrocious and cruel" aggravating circumstance); Issue IX (erroneous instructions regarding votes necessary for a life sentence); and Issue X (improper bur-

---

7. The receipt did not include a first name. The store owner, however, testified that the defendant himself was a party to the February 15 transaction reflected on the receipt.

den-shifting instruction at penalty phase). Because we agree with Duest that resentencing is appropriate on the grounds raised in Issue II, we need not reach the other issues raised by Duest pertaining to his sentence.

### Duest's Johnson v. Mississippi Claim (Issue II)

As noted *supra*, Duest contends that because the sentencing jury's recommendation of death was based upon consideration of a criminal conviction that was later vacated by the Massachusetts courts, resentencing is in order under *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). Two questions must be answered in order to decide Duest's claim. First, did the sentencing jury's consideration of Duest's prior vacated conviction amount to Eighth Amendment error under *Johnson?* Second, if so, did the Florida Supreme Court err in concluding that the Eighth Amendment error was harmless?

### A. *Eighth Amendment Error*

█ In *Johnson,* the sentencing jury found three aggravating circumstances regarding Johnson's murder of a Mississippi highway patrolman, one of which was that Johnson had "previously been convicted of a felony involving the use or threat of violence to the person of another."[8] The sole evidence supporting this aggravating circumstance was an authenticated copy of petitioner's commitment following his 1963 conviction in New York State for second-degree assault with intent to commit first-degree rape. The prosecutor repeatedly referred to this conviction during sentencing. Because the three aggravating circumstances outweighed the mitigating circumstances, the Mississippi jury, the sentencer under Mississippi law, sentenced Johnson to death. In 1987, after the Mississippi jury passed its sentence, the New York Court of Appeals reversed Johnson's conviction for second-degree assault with intent to commit first-degree rape on the

grounds that Johnson's confession was coerced.[9] Despite the sentencing jury's consideration of this invalid conviction, the Mississippi Supreme Court affirmed Johnson's death sentence.

The United States Supreme Court reversed and remanded the case to the state courts for resentencing. The Court held that the sentencing jury's consideration of the invalid conviction violated the Eighth Amendment because the decision to sentence Johnson to death was predicated on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process." *Johnson,* 486 U.S. at 585, 108 S.Ct. at 1986 (quoting *Zant v. Stephens,* 462 U.S. 862, 884–85, 887 n. 24, 103 S.Ct. 2733, 2747, 2748 n. 24, 77 L.Ed.2d 235 (1983)).

Thus, *Johnson* stands for the proposition that a sentencing jury's consideration of a vacated conviction in establishing aggravating factors violates the Eighth Amendment because such consideration undermines the "need for reliability in the determination that death is the appropriate punishment." *Id.* at 584, 108 S.Ct. at 1986 (citations omitted). In assessing Duest's *Johnson* claim, the Florida Supreme Court implicitly recognized the existence of an Eighth Amendment violation. *Duest v. Dugger,* 555 So.2d at 851. The State does not dispute the existence of Constitutional error in this case.

### B. *Harmless Error*

█ Before examining whether the Eighth Amendment error in this case was harmless, we note that federal courts are not bound by state court determinations as to whether Constitutional error is harmless. *Jackson v. Dugger,* 931 F.2d 712, 717 (11th Cir.), *cert. denied sub nom. Singletary v. Jackson,* —— U.S. ——, 112 S.Ct. 452, 116 L.Ed.2d 470 (1991). Whether such error rises to the level of reversible error is a mixed question of law and fact, reviewable *de novo. Id.*

---

8. Mississippi, like Florida, is a "weighing" state. *See* note 1, *supra*.

9. The reasons for the 24-year delay between Johnson's New York conviction and the New York Court of Appeals' reversal are irrelevant to the issue before us.

In *Johnson,* the State opposed Johnson's request for resentencing, arguing that because the Mississippi Supreme Court had concluded that the death sentence returned by the jury would have stood even absent Johnson's New York conviction, such resentencing was inappropriate. The United States Supreme Court rejected this argument. First, the Court noted that the Mississippi Supreme Court had expressly refused to conduct a harmless error analysis, and that such refusal was appropriate, given that the prosecution had focused upon that aggravating factor far more than on the others. *Johnson,* 486 U.S. at 590 n. 8, 108 S.Ct. at 1988–89 n. 8. Second, and "more importantly," the Court noted that "the error here extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible. Here the jury was allowed to consider evidence that has been revealed to be materially inaccurate." *Id.* at 590, 108 S.Ct. at 1989.

As noted *supra,* the Florida Supreme Court rejected Duest's *Johnson* claim because it "believe[d] beyond a reasonable doubt that Duest would still have received a sentence of death without evidence of [the vacated] conviction." *Duest v. Dugger,* 555 So.2d at 851.[10] The Court noted that even if Duest's vacated Massachusetts conviction were not considered by the sentencing jury, (1) another conviction for armed robbery remained extant, thereby preserving the existence of the "prior crimes of violence" aggravating circumstance; and (2) three other aggravating factors existed independent of the "prior crimes of violence" factor. *Id.* The State, of course, agrees with the Florida Supreme Court, adding that, unlike the sentencing jury in *Johnson,* the sentencing jury in this case received only limited exposure to the vacated conviction: the prosecution never mentioned the conviction during the sentencing phase, and the court merely read and later re-read the indictments to the jury.

Notwithstanding the Florida Supreme Court's analysis, and the contentions of the State, we hold that the Eighth Amendment error resulting from the sentencing jury's consideration of Duest's vacated Massachusetts conviction was not harmless.

The Supreme Court's decisions in *Johnson, supra,* and *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), support our holding, and help us identify the specific reasons why the Eighth Amendment error in this case was not harmless. As noted *supra,* the *Johnson* Court stated that, had the Mississippi Supreme Court conducted a harmless error review of the sentencing jury's consideration of Johnson's vacated New York conviction, such review would have yielded a determination that the error was not harmless. First, the Court pointed out that the prosecution's focus on the vacated conviction made the jury's reliance on that conviction especially likely. *Johnson,* 486 U.S. at 590 n. 8, 108 S.Ct. at 1989 n. 8. The Court in *Clemons* likewise concluded that where the State "repeatedly emphasized and argued the [constitutionally impermissible aggravating factor] during sentencing, ... it would require a detailed explanation based on the record for us to agree that the error in giving the invalid ... instruction was harmless." *Clemons,* 494 U.S. at 753–54, 110 S.Ct. at 1451.

Although the jury in this case received less exposure to the vacated conviction than did the jury in *Johnson,* the circumstances surrounding the jury's consideration of this conviction indicate that reversible error occurred here as well. The fact that the jury requested to see the vacated convictions after having deliberated for a time suggests strongly that this particular evidence played a significant role in the jury's ultimate determination that death was the appropriate sentence. It is impor-

---

**10.** This is the proper standard by which a court measures whether a constitutional violation is harmless error. *Clemons v. Mississippi,* 494 U.S. 738, 753, 110 S.Ct. 1441, 1451, 108 L.Ed.2d 725 (1990); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We agree with the district court in this case that the Florida Supreme Court conducted a harmless error analysis rather than independently reweighing the aggravating and mitigating circumstances. September 19 Order at 16–17.

tant to note that the jury did not request additional information or instruction from the trial court on any other matter. It is unclear from the record how much time elapsed between the jury's request and its arrival at a recommendation of death; nevertheless, the fact that the entire sentencing hearing took only one day, combined with the other circumstances surrounding the jury's determination, further calls into question the reliability of the jury's recommendation. Finally, that the jury recommended death by the narrowest of margins renders its consideration of the vacated conviction especially problematic. Thus, the context in which the sentencing jury considered Duest's conviction undermines confidence in the jury's recommendation of death as much as the context in which the jury imposed death in *Johnson.*

The *Johnson* Court rejected a finding of harmless error not only because of the jury's particular exposure to Johnson's vacated conviction, but also because "the error [in *Johnson*] extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible. Here the jury was allowed to consider evidence that has been revealed to be materially inaccurate." 486 U.S. at 590, 108 S.Ct. at 1989. The *Clemons* Court reemphasized this distinction in holding that the Mississippi Supreme Court was not precluded from conducting a harmless error analysis on remand where the trial court, rather than admitting inaccurate and misleading evidence, merely had given an erroneous instruction regarding application of the "especially heinous atrocious and cruel" aggravating circumstance. *Clemons*, 494 U.S. at 754–55 n. 5, 110 S.Ct. at 1451 n. 5.

The distinction drawn by the Court in *Johnson* and *Clemons* compels reversal here. Duest's sentencing jury was allowed to consider evidence that has been revealed

to be materially inaccurate. Unlike the jury in *Clemons*, Duest's jury did not merely consider in an improper context evidence that had been admitted during the guilt phase; it considered evidence that incorrectly indicated that (1) Duest had been convicted of a crime involving violence, and that (2) the underlying conduct for which he was convicted reflected a murderous intent. The fact that Duest may have committed some of the underlying conduct alleged in the indictment—that is, the armed assault—in no way renders harmless the effects such inaccuracies may have had on the jury. The implication that Duest had acted with murderous intent in committing armed assault might well have had particular impact on a jury considering whether to recommend life or death.

In *Brown v. Dugger*, 831 F.2d 1547 (11th Cir.1987), this court stated that:

> If there remains a possibility that the constitutionally-proscribed evidence impacted on the ultimate decisional process of the jury, if the beneficiary of the error cannot refute that possibility beyond all reasonable doubt, constitutional errors can never be deemed harmless.

*Id.* at 1554 (citing *Hutchins v. Wainwright*, 715 F.2d 512, 517 (11th Cir.1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984)). It is apparent that the jury's particular focus on the vacated conviction prior to its 7–5 recommendation of death raises a serious possibility that such evidence impacted the ultimate decisional process of the jury. Under the circumstances of this case, the State cannot show beyond a reasonable doubt that the jury would have recommended death absent consideration of the vacated Massachusetts conviction.[11] Therefore, the sentencing jury's consideration of the vacated

---

11. It is equally apparent that, had the sentencing jury recommended life, the trial court would not have overridden this recommendation and sentenced Duest to death. As conceded by the prosecution, there was "plenty of nonstatutory mitigating evidence present in this case" to support a jury determination of life imprisonment in this case. Under Florida law, a sentencing

court may not override a jury recommendation of life imprisonment if the jury recommendation has a reasonable basis. *Hall v. State*, 541 So.2d 1125, 1128 (Fla.1989). In this case, the nonstatutory mitigation would have furnished such a reasonable basis for a life recommendation.

conviction amounts to reversible error.[12]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM Duest's conviction for first-degree murder. We REVERSE the district court's denial of a writ of habeas corpus and VACATE Duest's death sentence. We REMAND the case to the district court for proceedings consistent with this opinion.

---

**12.** This case is different from *Kennedy v. Dugger*, 933 F.2d 905 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992), in which this court rejected a *Clemons* claim on the ground that the Florida Supreme Court's harmless error review was correct. This court held that, even after the Florida Supreme Court discounted three out of seven aggravating factors on the grounds that the trial court had misapplied the statutory criteria as to those factors, four aggravating circumstances remained, as against one mitigating circumstance, and that therefore the Florida Supreme Court's harmless error analysis was correct. *Kennedy,* 933 F.2d at 911–12. Even though the balance of aggravating versus mitigating factors in this case is similar to the balance in *Kennedy,* given that three aggravating factors and no *statutory* mitigating factors were found by the trial court in this case, the cases are otherwise different, and underscore the distinction made by the United States Supreme Court in *Clemons* and *Johnson.* In *Kennedy* the information to which the jury was exposed was not materially inaccurate; indeed, as in *Clemons,* the jury in *Kennedy* heard no evidence at sentencing that it could not have heard at any other point in the trial. This case, like *Johnson* and unlike *Kennedy,* involved (1) the jury's exposure to materially inaccurate information, (2) in a context which rendered that information particularly harmful to the defendant. Thus, the mere fact that the aggravating circumstances predominate over mitigating factors here is irrelevant given circumstances which undermine confidence in the jury's determination that death was the appropriate sentence. *Johnson,* 486 U.S. at 584, 108 S.Ct. at 1986.