WILSON, Circuit Judge,
dissenting:
The district court correctly decided this case by concluding that the violation of Hittson’s constitutional rights had a “substantial and injurious effect or influence” on the jury’s determination to sentence him to death. Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993). In addition, I am unable to join the Majority’s disregard of our precedent inherent in its conclusion that it does not matter whether a state *1279 court, sitting in collateral review, applies either the harmless error standard articulated in Brecht, or the more petitioner-friendly harmless error standard provided by Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). To be clear, I agree with the Concurrence that the state court’s application of the incorrect standard would not be an independent basis for granting habeas relief. See Fry v. Pliler, 551 U.S. 112, 121-22, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007) (holding that federal habeas courts must apply the Brecht standard even where the state court did not recognize a constitutional error). However, the fact that we would not grant habeas on that basis alone does not mean that state courts are free to apply Brecht instead of Chapman, or as in Fry, no review at all, when a constitutional error was committed. As our court has said three times, state courts are supposed to apply Chapman, not Brecht, even on collateral review. Here, my concurring colleague goes to great lengths to characterize what we have said as dicta. In so doing, the Concurrence disregards binding precedent for purposes that are not even relevant to the resolution of this case, given our conclusion that Fry precludes use from granting relief based solely on a state collateral court’s application of the wrong harmless error standard. But we have made clear that, even though we cannot grant habeas relief on this basis, it is nevertheless erroneous for state courts to apply Brecht not Chapman on collateral review. To the extent that the Majority suggests otherwise, I cannot endorse that opinion, which essentially tells state courts that because we cannot grant relief when they apply the wrong standard, they are free, despite our precedent, to apply the wrong standard at will.
The district court concluded that Hittson was entitled to habeas relief, holding that the trial court’s allowance of Dr. Storms’s testimony denied Hittson his Fifth and Sixth Amendment rights under Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), and that the testimony had a “substantial and injurious effect” on the jury’s death sentence and was therefore not harmless under the Brecht standard. 507 U.S. at 637, 113 S.Ct. at 1722. In Hittson’s case, the jury imposed the death penalty after finding one aggravating statutory circumstance: that the murder was “outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind.” Hittson v. Humphrey, No. 5:01-cv-384, 2012 WL 5497808, at *40 (M.D.Ga. November 13, 2012). As the district court notes, Dr. Storms’s testimony was the only evidence that, months after the crime, Hittson possessed a corrupt or depraved mind. Id. Because Georgia law requires a jury to unanimously find at least one statutory aggravating factor to return a death sentence, “habeas relief is warranted in this case if we believe even one of the jurors who voted in favor of the death penalty likely was substantially influenced” by the error. Duest v. Singletary, 997 F.2d 1336, 1339 (11th Cir.1993) (per curiam). Thus, contrary to the Majority, I agree with the district court that we cannot conclude with fair assurance that the erroneous admission of Dr. Storms’s testimony in the context of the trial as a whole did not substantially sway the jury. The testimony was admitted in violation of clearly established Supreme Court precedent. See Estelle, 451 U.S. at 471, 101 S.Ct. at 1877. The constitutional violation was harmful under the Brecht standard, and therefore Hittson is entitled to habeas relief.
Further, the district court correctly noted that the state collateral court erred applying the Brecht harmless error standard rather than the Chapman harmless error standard. Although the Majority concedes that the Georgia Superior Court’s application of the Brecht standard *1280 to Hittson’s Estelle claims was “seemingly anomalous” and that Georgia habeas courts typically apply the more petitioner-friendly standard from Chapman, it concludes that state courts are only required to use Chapman harmless error standard on direct review.[1] Also, the Majority ultimately finds the state habeas court’s choice of a standard of review irrelevant because, in any event, the federal court will apply the Brecht standard.
However, our precedent clearly requires state courts hearing habeas corpus appeals to use the more petitioner-friendly standard provided in Chapman. Before today’s case, no state appellate court in this circuit, as far as I can find, has applied the Brecht standard to review the lower state court’s constitutional error. This is expected, as we have unambiguously required that state collateral courts apply Chapman in reviewing their federal constitutional claims. See Trepal v. Sec’y, Fla. Dep’t of Corr., 684 F.3d 1088, 1112 n. 27 (11th Cir.2012), cert. denied, — U.S.-, 133 S.Ct. 1598, 185 L.Ed.2d 592 (2013); Duest, 997 F.2d at 1338 & n. 2. In Trepal, we said:
We emphasize that the Brecht standard is a harmless error test that applies to federal habeas review of state convictions. Brecht, 507 U.S. at 634-38, 113 S.Ct. at 1720-22; [Ventura v. Atty. Gen., Fla., 419 F.3d 1269, 1279 n. 4 (11th Cir.2005) ]. It does not apply to state courts’ review of their own convictions. Instead, the Florida courts apply the more petitioner-friendly Chapman standard of whether the constitutional error is “harmless beyond a reasonable doubt.”
684 F.3d at 1112 n. 27 (emphasis added).[2] And in Duest, we said again, “The harmless-error standard for constitutional violations in all other situations remains the longstanding test of Chapman v. California: whether the State has proved the error was harmless beyond a reasonable doubt.” 997 F.2d at 1338 n. 2 (citation omitted). This guidance to the state court is not vague in any way, as my concurring colleague suggests. We clearly stated that the appropriate standard in “all other situations,” obviously including collateral review, is the “longstanding test of Chapman v. California.” Id. Most recently in Rodriguez v. Sec’y of Fla., No. 11-13273, 756 F.3d 1277, 2014 WL 2922664 (11th Cir. June 30, 2014), we reiterated that Brecht is only the appropriate harmless error standard for federal habeas review, citing our decision in Trepal. See Rodriguez, 756 F.3d at 1302, n. 44, p. 53, n. 44 (“Because we consider the Brecht question in the first instance on federal habeas review, there is no state court Brecht actual-prejudice finding to review or to which we should defer.” (emphasis added) (citing Trepal, 684 F.3d at 1112)). Our precedent has routinely advised state courts that while the Brecht standard applies to assess constitutional error in federal court, Chapman is the appropriate standard on state collateral review. Each of my colleagues in today’s Majority was on the panel in either Trepal or Duest, and both were on Rodriguez, joining opinions making it clear that state courts are expected to use Chapman — not Brecht — to analyze constitutional errors.[3]
In addition to our own precedent, the Supreme Court in Brecht itself indicated *1281 that state courts are required to apply the more petitioner-friendly Chapman analysis of whether the constitutional error is “harmless beyond a reasonable doubt.” See Brecht, 507 U.S. at 636, 113 S.Ct. at 1721 (noting the “harmless-error review that Chapman requires” of state courts). In Brecht, the Supreme Court explained that it would not make sense for federal courts to apply Chapman in reviewing state errors, after the state courts had themselves used that standard. Id. (“[I]t scarcely seems logical to require federal habeas courts to engage in the identical approach to harmless-error review that Chapman requires state courts to engage in on direct review.”). Indeed, the Supreme Court acknowledged that interests in comity and federalism support a standard, such as Brecht, which is less petitioner-friendly than Chapman, for federal collateral review of state constitutional errors. Id. That federal habeas courts apply a more deferential harmless error standard does not mean that states are free to do the same: it only means that we cannot grant relief for less egregious constitutional errors in state courts. To be clear, however, applying Brecht in state courts is error.
More recently, the Supreme Court implied the mandatory nature of Chapman review for state courts analyzing the effects of constitutional error in Fry v. Pliler. 551 U.S. at 117-18, 127 S.Ct. at 2326. In Fry, while addressing the standard under which a federal court must assess the prejudicial impact of a constitutional error, the Supreme Court repeatedly acknowledged that state courts “are required to” apply the Chapman standard in reviewing their own constitutional errors. See, e.g., Fry, 551 U.S. at 118, 127 S.Ct. at 2326 (“To say (a) that since state courts are required to evaluate constitutional error under Chapman it makes no sense to establish Chapman as the standard for federal habeas review is not at all to say (b) that whenever a state court fails in its responsibility to apply Chapman the federal habeas standard must change.”). The Supreme Court ultimately held that Brecht’s applicability to federal review of state constitutional errors is not contingent on whether or not the state appellate court recognized the constitutional error and “reached the Chapman question,” thus implicitly recognizing that Chapman continues to be the proper standard for a state court’s review of its own constitutional errors. Id., 127 S.Ct. at 2326. Fry certainly did not tell state courts that the Constitution does not require them to apply Chapman when they recognize and evaluate constitutional errors. Id. at 120-22, 127 S.Ct. at 2327-28. Even if we disregard the obvious implications of Brecht and Fry, in addition to our court’s clear precedent, neither Respondent nor the Majority has pointed us to any authority indicating that states are free to use Brecht on initial collateral review in habeas corpus proceedings.[4] Indeed, if there was any doubt that *1282 Chapman was meant to apply as the harmless error standard on state collateral review, our precedent clarifies the expectation that Chapman does apply.
Finally, I disagree with the Majority’s statement that it does not matter whether Georgia’s application of Brecht instead of Chapman was unreasonable, because we will just apply Brecht de novo anyway. If we apply Brecht de novo without first affording the State an opportunity to apply Chapman, what is the point — why have we been telling the states all these years to apply Chapman and not Brecht ? The state court here, unlike the state court in Fry, found that the lower court had committed constitutional error and applied a standard that was more difficult for Hitt-son to meet than the standard precedent required the court to apply. That the error was not, in the Majority’s view, harmful based on the Brecht standard, simply does not mean the state court did not err in applying Brecht rather than Chapman.
Here, the district court properly applied Brecht and concluded that the violation of Hittson’s constitutional rights had a “substantial and injurious effect or influence” on the jury’s determination to sentence him to death. Brecht, 507 U.S. at 637, 113 S.Ct. at 1722. Thus, Hittson probably would have achieved habeas relief at the state court level, had the state court applied the proper, less onerous standard that constitutional violations require reversal unless they were “harmless beyond a reasonable doubt,” Chapman, 386 U.S. at 24, 87 S.Ct. at 828. The State insists that the record as a whole and the horrific details of Hittson’s crime are so overwhelming that Dr. Storms’s unconstitutional testimony, rebutting the minimal testimony of remorse Hittson provided, did not make a difference in the outcome of the trial. Like the district court I disagree, and find that the violation of Hitt-son’s constitutional rights was substantial and injurious. Brecht, 507 U.S. at 638, 113 S.Ct. at 1722. Also, according to our precedent and the clear implication of the Supreme Court, Hittson was still entitled to have his Fifth Amendment claim considered by the State of Georgia under the Chapman analysis before our review and he was deprived of that entitlement.
Accordingly, I respectfully dissent.

. The Majority places their analysis of the appropriate standard of review for state collateral courts assessing constitutional errors in footnote 26.

. I disagree with my concurring colleague that the most that can be said of Trepal is that we said that state courts "usually do apply [Chapman ] standard on collateral review.” Concurring Op., p. 1274.

.The Majority’s analysis of this issue, which appears only in footnote 26, does not even cite this binding Circuit precedent.

. I disagree that Fry supports the Majority's conclusion that it does not matter what standard a state collateral court applies in assessing constitutional error. In that decision, the Supreme Court held that a federal court must assess the prejudicial impact of a state court’s constitutional error under Brecht’s "substantial and injurious effect” standard, not under Chapman's "harmless beyond reasonable doubt” standard, regardless of whether the state court has recognized the error and found it harmless under the Chapman standard. Fry, 551 U.S. at 121, 127 S.Ct. at 2328. Thus, Fry assumes that state collateral courts will properly apply the Chapman standard. That the state court failed to do as required matters a great deal, especially because the error deprived Hittson of his opportunity to have the petitioner-friendly standard applied to him. Fry makes it unclear whether we can grant habeas relief based upon the court’s error, but again, we should be clear that it was error, that it should not be repeated, and that it matters.