WILSON, Circuit Judge,
dissenting:
Defendants facing the death penalty— the “gravest sentence our society may impose”—must have “a fair opportunity to show that the Constitution prohibits their execution,” Hall v. Florida, 572 U.S. -, -, 134 S.Ct. 1986, 2001, 188 L.Ed.2d 1007 (2014). This means that they must receive “meaningful access to justice” during their capital proceedings. See Ake v. Oklahoma, 470 U.S. 68, 76-77, 105 S.Ct. 1087, 1092-1093, 84 L.Ed.2d 53 (1985). In Ake, the Supreme Court held that this guarantee requires states to provide defendants meaningful “access to a psychiatrist[ ]” when their mental health “is likely to be a significant factor” at trial or sentencing. See id. at 74-77, 105 S.Ct. at 1091-1093. James Edmund McWil-liams, Jr. was denied this basic right.
McWilliams’s mitigation case depended on the judge and jury’s conclusions about his mental health. Nonetheless, McWil-liams did not receive any expert assistance during his sentencing before the jury. And, at his judicial sentencing hearing, he again was denied assistance, absent an expert report provided hours beforehand from a mental health expert who did not have the opportunity to review his full psychiatric history. This was not meaningful assistance. For these reasons, Alabama’s resolution of McWilliams’s Ake claim was “an unreasonable application of clearly established Federal law.” 28 U.S.C. § 2254(d)(1), Therefore, I would reverse the district court’s denial of McWilliams’s habeas petition with directions to remand the case to state court for a new sentenc-ing hearing.
I.
The penalty phase of McWilliams’s trial began on August 28,1986. On that date, a sentencing hearing was held before the jury. Although McWilliams received psychological services in the months leading up to the murder of Patricia Reynolds and his mental health history formed the basis of his mitigation case, the trial court did not provide him access to a psychiatrist during this phase. Moreover, defense counsel subpoenaed Dr. Sherril Rhodes to testify at the hearing, but Dr. Rhodes did *713 not appear. Ultimately, McWilliams and his mother were the only witnesses for the defense during the penalty phase. Meanwhile, the State proffered multiple expert psychiatric witnesses.
McWilliams’s judicial sentencing hearing was scheduled for October 9, 1986. On September 30, 1986, the trial court appointed a clinical neuropsychologist, Dr. John R. Goff—a state employee—to examine McWilliams and generate a- report. Dr. Goff provided his report to both the prosecution and defense on October 7, 1986. The report stated that McWilliams’s “neuropsychological assessment [wa]s reflective of organic brain dysfunction which is localized to the right cerebral hemisphere.” It also found there was evidence of “cortical dysfunction attributable to the right cerebral hemisphere dysfunction.” The report concluded that “in light of [McWilliams’s] obvious neuropsychological deficit, organic personality syndrome should be considered.” The next day, on' October 8, the court advised defense counsel that it had just received McWilliams’s medical and psychiatric Department of Corrections (DOC) records, which counsel had subpoenaed multiple times. However, various records remained missing. The DOC produced more records on October 9—the day of the sentencing hearing,
Faced with less than 48 hours to review this new information and consider its usefulness, defense counsel sought more time to secure the services of an expert to assist him in evaluating the records. Counsel stated to the court:
[G]iven the nature of this case ... it is necessary on my part to have someone else review these findings____[W]e are unable to present anything because of the shortness of time between which this material was supplied to us and the date of the hearing— It is the position of the Defense that we received these records at such a late date, such a late time that it has put us in a position as layman, with regard to psychological matters, that we cannot adequately make a determination as to what to present to The [sic] Court with regards to the particular deficiencies that the Defendant has— [W]e really need an opportunity to have the right type of experts in this field, take a look at all of those records and tell us what is happening with him. And that is why we renew the Motion for a Continuance.
Nevertheless, the court denied the Motion for Continuance.
This sequence of events does not constitute the meaningful access to a mental health expert contemplated by Ake.
II.

A. An Unreasonable Application of Ake

Ake is unequivocal: due process requires states to provide a defendant the access to a psychiatrist necessary to assure him “a fair opportunity to present his defense” and the ability “to participate meaningfully in [his] judicial proceeding[s].” See Ake, 470 U.S. at 76-77, 83-84, 105 S.Ct. at 1092-93, 1096-97; Medina v. California, 505 U.S. 437, 444-45, 112 S.Ct. 2572, 2577, 120 L.Ed.2d 353 (1992) (“The holding in Ake can be understood as an expansion of earlier due process cases holding that an indigent criminal defendant is entitled to the minimum assistance necessary to assure him a fair opportunity to present his defense and to participate meaningfully in the judicial proceeding.” (internal quotation marks omitted)). Accordingly, “[t]he [s]tate must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of *714 the defense.” Ake, 470 U.S. at 83, 105 S.Ct. at 1096 (emphasis added). This requirement applies to any trial or sentencing proceedings in which the defendant’s mental health will be a significant factor.[1] See id. at 83-84, 105 S.Ct. at 1096-97; Blanco v. Sec’y, Fla. Dep't of Corr., 688 F.3d 1211, 1223 (11th Cir.2012).
Providing further insight into the type of assistance compelled by Ake, the Ake Court explained the role of the psychiatrist in this context as: (1) gathering facts— through an examination, interviews, and elsewhere—to share with the judge and jury; (2) analyzing the information gathered and rendering conclusions about the defendant’s mental condition; (3) assisting the defendant with identifying the probative questions to ask of the prosecution’s psychiatrists; (4) assisting the defendant with understanding the opinions proffered by the other party’s psychiatrists; and (5) helping lay jurors make a sensible and educated determination about the defendant’s mental condition. See Ake, 470 U.S. at 80-81, 105 S.Ct. at 1095.
Thus, Ake does not, simply entitle a criminal defendant to expert assistance; the assistance must be meaningful. McWilliams was denied this right during both the penalty phase and judicial sentencing hearing.
1. As with the Defendant in Ake, McWil-liams Was Not Provided Any Psychiatric Assistance When Fie Appeared Before the Jury for Sentencing.
The facts surrounding McWilliams’s penalty phase hearing mirror those that resulted in a denial of due process in Ake. After the defendant in Ake was found guilty, he appeared before the jury for sentencing. During this proceeding, the prosecution relied on testimony from state psychiatrists who examined the defendant, but the defendant had “no expert witness to rebut this testimony or to introduce on his behalf evidence in mitigation of his punishment.” Id. at 73, 105 S.Ct. at 1091. The Court held that the defendant was denied due process as a result of the state’s failure to provide him access to a psychiatrist at the proceeding. Id. at 86-87, 105 S.Ct. at 1098. Likewise, McWil-liams appeared before the jury for sentencing—his “penalty phase” hearing—after his verdict was rendered, and the trial court did not provide him any access to a psychiatrist, leaving him with no means to rebut the State’s expert testimony. Therefore, as in Ake, McWilliams was denied due process when he appeared before the jury for sentencing.
2. The Trial Court Failed to Provide McWilliams Meaningful Assistance at the Judicial Sentencing Hearing.
The trial court’s failure during the penalty phase could have been remedied through the provision of meaningful expert assistance for the judicial sentencing hearing. But, the trial court did not provide McWilliams such assistance, thereby denying him due process.
First, Dr. Goffs late arrival to the proceedings rendered any assistance he could provide a nullity, not the meaningful assis *715 tance contemplated by Ake. This court has previously explained that a psychiatric examination must be done “at such a time to allow counsel a reasonable opportunity to use the psychiatrist’s analysis in the preparation and conduct of the defense.” Blake v. Kemp, 758 F.2d 523, 533 (11th Cir.1985). Dr. Goff was unable to provide assistance to the defense until less than 48 hours before the judicial sentencing hearing—when his report and findings were finally completed. This was an inadequate amount of time for Dr. Goff to educate defense counsel on the report, assist counsel in developing a strategy and testimony for the hearing, and/or help counsel understand and respond to the testimony put forth by the State’s expert witnesses at the penalty phase. See Ake, 470 U.S. at 80-81, 105 S.Ct. at 1095. In light of the technical nature of the report and McWilliams’s complex mental health history, the defense did not even have enough time to achieve the basic level of understanding of the report needed to use it at the hearing. Moreover, in the hours leading up to the hearing, defense counsel had to determine how the newly provided DOC records related to the report’s findings. Thus, any assistance received from Dr. Goffs report was superficial and far from meaningful.
Second, Dr. Goff could not provide competent assistance because he did not have the benefit of reviewing critical mental health records. Despite defense counsel’s multiple requests to the DOC, the DOC did not produce McWilliams’s mental health records until hours before the sentencing hearing—after Dr. Goffs report was completed. These records showed, inter alia, that McWilliams was medicated with antipsychoties and antidepressants while incarcerated. Without access to these highly relevant records, Dr. Goff could not have provided a meaningful analysis.[2] See Blake, 758 F.2d at 532-33 (finding the defendant was denied due process because the state did not produce records relevant to his expert psychiatrist’s testimony until the day before trial); Starr v. Lockhart, 23 F.3d 1280, 1288-89 (8th Cir. 1994) (holding that the defendant was denied due process under Ake where the psychiatrist was merely “[un]able to interpret or explain” relevant information, including the results of past mental health examinations)!
Third, in order to obtain meaningful assistance from a psychiatrist, the defense must be able to speak freely with the psychiatrist about its case, without the prosecution’s access to the discussion. As McWilliams points out in his brief, Ake is not satisfied by an expert “who would provide ... assistance to the defendant, only to cross the aisle and disclose to the State the future cross-examination of defense counsel.” However, as a neutral expert, Dr. Goff was free to make such a disclosure.
Relatedly, Ake requires that a defendant receive an opportunity—through an independent psychiatrist—to “develop[ ] his own psychiatric evidence to rebut the [State’s] evidence and to ¿nhance his defense in mitigation.” Tuggle v. Netherland, 516 U.S. 10, 13, 116 S.Ct. 283, 285, 133 L.Ed.2d 251 (1995) (per curiam) (emphasis added). In addition to being a state employee with the ability to speak to the prosecution about his report and the de *716 fense’s case, Dr. Goff provided his report to the defense and prosecution at the same time. Clearly, the report did not serve as McWilliams’s “own psychiatric evidence.”[3]
In sum, far from simply being denied the chance to choose his own psychiatrist or receive funds to hire his own psychiatrist, McWilliams was deprived of basic access to a psychiatrist. Although his life was at stake and his case for mitigation was based on his mental health history, McWilliams received an inchoate psychiatric report at the twelfth hour and was denied the opportunity to utilize the assistance of a psychiatrist to develop his own evidence. As a result, McWilliams was precluded from meaningfully participating in the judicial sentencing hearing and did not receive a fair opportunity to rebut the State’s psychiatric experts. Put simply, he was denied due process. See Simmons v. South Carolina, 512 U.S. 154, 164-65, 114 S.Ct. 2187, 2194, 129 L.Ed.2d 133 (1994) (plurality opinion) (citing Ake, 470 U.S. at 83-87, 105 S.Ct. at 1096-98) (holding that defendant was denied due process where he was “prevented from rebutting information that the sentencing authority considered”). Given these circumstances, the state court’s application of Ake was unreasonable.[4]

B. A Substantial and Injurious Effect

We are required to grant habeas relief for an “Ake error” if the error had a “substantial and injurious effect” on the trial or sentencing. See Hicks v. Head, 333 F.3d 1280, 1286 (11th Cir.2003) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623, 113 act. 1710, 1714, 123 L.Ed.2d 353 (1993)) (internal quotation marks omitted). Alabama’s Ake error had this effect on McWilliams’s death sentence, as it preclud *717 ed McWilliams from offering evidence that directly contradicted the psychiatric evidence put forward by the State.
At the penalty phase of his trial, McWil-liams had no opportunity to respond to testimony provided by the State’s expert psychiatrists opining that McWilliams was a malingerer who “faked” mental illness. He was reduced to reading to the judge and jury a technical psychiatric report that indicated he was potentially psychopathic, but the information was virtually useless in the absence of an expert who could explain the report and answer the State’s questions. At the judicial sentencing hearing, McWilliams was again denied the assistance he required to respond to the State’s expert testimony. Hence, as a result of the trial court’s error, a convicted murderer had to testify about his own mental health, was called a liar by State experts, and then was prevented from showing otherwise.
Testimony from McWilliams’s state post-conviction hearing shows that, with appropriate assistance, he would have been in position to confront the State’s evidence that he was merely feigning mental health issues. At the post-conviction hearing, Dr. George Woods—an expert in psychiatry and neurology—stated that McWilliams’s psychiatric testing indicated a “cry-for-help.” He then explained the difference between a “fake-bad” and a “cry-for-help” diagnosis; the former is “someone attempting to make themselves look worse,” and the latter, while seemingly “very similar” to the former, actually reflects “significant psychiatric and psychological problems.” Dr. Woods further contradicted the State’s experts by concluding McWil-liams was suffering from bipolar disorder the night of the crime. Dr. Woods’s findings relied on, inter alia, records from the DOC showing McWilliams was medicated with antipsychotics and antidepressants throughout his entire incarceration. Due to the trial court’s failures, McWilliams was wholly unable to present this or simi--lar evidence during sentencing.
Despite this powerful evidence, the concurring opinion finds that McWilliams has not shown a substantial and injurious effect-“in part because ... [he] did not present Dr, Goff as a witness at the state post-conviction hearing[,]” and therefore, “we do not know how additional time with Dr. Goff (and his report) would have benefited the defense.” See Concurring Op. at 712. But, this argument is belied by Dr. Woods’s testimony, which shows that McWilliams would have presented “different,” significantly “more viable” mental health evidence during sentencing if he was afforded an expert who actually reviewed his full psychiatric history and had more than a few hours to assist the defense. See Hicks, 333 F.3d at 1287.
Furthermore, when considering whether a defendant was prejudiced by a constitutional error that affected his presentation of mitigation evidence, we are required to “evaluate the totality of the available mitigation evidence—-both that adduced at trial, and the evidence adduced in the habeas proceeding”—and “reweigh[ ] it against the evidence in aggravation.” See Williams v. Taylor, 529 U.S. 362, 397-98, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000) (citing Clemons v. Mississippi, 494 U.S. 738, 751-52, 110 S.Ct. 1441, 1449-50, 108 L.Ed.2d 725 (1990)); Hicks, 333 F.3d at 1286-87 (weighing the mitigation evidence presented during trial and habeas proceedings in considering whether an Ake error had a substantial and injurious effect). In other words, we must consider the evidence before us. Nonetheless, my concurring colleague is dissuaded, in part, because “McWilliams did not present Dr. Goff as a witness at the state post-conviction hearing.” Concurring Op. at 712. In *718 light of the relevant precedent, I am inclined, however, to weigh the evidence in the record, rather than opine about the value of hypothetical evidence not in the record. See Williams, 529 U.S. at 397-98, 120 S.Ct. at 1515.
After weighing the available evidence, we are required to ask ourselves: “does a grave doubt exist as to whether” the Ake error “substantially influence[d]” McWilliams’s sentence? See Duest v. Singletary, 997 F.2d 1336, 1339 (11th Cir.1993) (per curiam). To me, the answer to this question is clear. McWilliams has shown that but-for the trial court’s Ake error, the court would have been faced with a starkly different record. McWilliams has put forth evidence contesting the Lunacy Commission, showing he was not malingering, and demonstrating that he suffered from a major mental illness at the time of the crime. Therefore, I cannot find that the Ake error did not substantially influence McWilliams’s sentence.
III.
Because the state court’s resolution of McWilliams’s Ake claim was an unreasonable application of Ake itself and this error had a substantial and injurious effect, I dissent. To remedy the error, I would reverse the district court’s denial of the petition for a writ of habeas corpus so that the matter can be remanded to the state court for a new sentencing hearing.

. Here, it was clear that McWilliams’s mental health was a significant factor in his sentencing proceedings, including both the penalty phase and judicial sentencing hearing, There is no dispute among the parties that McWil-liams’s rights under Ake were triggered for the judicial sentencing hearing. Moreover, at the penalty phase, the trial court was aware of the substantial role that McWilliams’s mental health was to play in his case for mitigation—the defense informed the court that it subpoenaed a mental health expert to testify at the penalty phase hearing, and at the hearing, the State offered expert psychiatric testimony, and McWilliams’s mother testified about McWilliams’s childhood head trauma.

. Additionally, under these circumstances— where the factfinder is deprived of expert testimony on parts of the defendant’s psychiatric history—the factfinder "loses the substantial benefit of potentially probative information," resulting in “a much greater lilcelihood of an erroneous decision.” See Ford v. Wainwright, 477 U.S. 399, 414, 106 S.Ct. 2595, 2604, 91 L.Ed.2d 335 (1986) (plurality opinion) (discussing the application of Ake).

. Indeed, we previously stated that ‘‘[t]he right to psychiatric assistance does not mean the right to place the report of a ‘neutral’ psychiatrist before the court; rather it means the right to use the services of a psychiatrist in whatever capacity defense deems appropriate.” Cowley v. Stricklin, 929 F.2d 640, 644 (11th Cir. 1991) (internal quotation marks omitted). Furthermore, the Majority opinion puts us at odds with our sister circuits on this issue. See Starr, 23 F.3d at 1287-88, 1290-91, 1294 (examining the relationship between Ake and United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953) and reversing where the defendant was provided a "neutral” state examiner); Smith v. McCormick, 914 F.2d 1153, 1157-58 (9th Cir. 1990) (holding that Ake requires the provision of a non-neutral psychiatrist); United States v. Sloan, 776 F.2d 926, 929 (10th Cir. 1985) (“The essential benefit of having an expert in the first place is denied the defendant when the services of the doctor must be shared with the prosecution.”).

. The concurring opinion states that the Supreme Court has not addressed whether Ake is satisfied by the appointment of a neutral psychiatrist and, therefore, the state court did not unreasonably apply Ake. This focus on the “neutral expert” .issue misses the point. Assuming for the sake of argument that a state’s failure to provide a defendant access to his own psychiatrist is not contrary to Ake, the state court’s decision is still an unreasonable application of Ake. As noted above, Ake plainly holds that when a defendant’s mental health is a significant factor at trial or sentencing, due process requires that the defendant receive access to a psychiatrist who can competently "assist in [the] evaluation, preparation, and presentation of [his] defense.” See Ake, 470 U.S. at 83, 105 S.Ct. at 1096. Regardless of the "neutral expert” issue, Dr. Goff was unable to assist defense counsel with the preparation and presentation of the defense because he did not finish his report until hours before the sentencing, hearing and did not have access to pivotal mental health records. Solely considering these deficiencies, it is clear that McWilliams was denied "the assistance of a psychiatrist for the development of his defense,” See Simmons, 512 U.S. at 165, 114 S.Ct. at 2194 (emphasis added) (summarizing the holding in Ake), Said another way, the concurring opinion's focus on the “neutral expert" issue misses the broader controlling issue: whether McWilliams received access to meaningful expert assistance.